Exhibit A B Page 1 of 14
Main Document Page 1 of 8

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Law Offices of Lee Linson<br>Lee Linson, SBN: 57632<br>11901 Santa Monica Blvd, Suite 449<br>Los Angeles, CA 90025<br>(310) 591-4004<br>(800) 756-6561 FAX<br>linsonlawyer@gmail.com<br><br>☐ *Individual appearing without attorney*<br>☑ *Attorney for:* Debtor(s) | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO DIVISION**

| List all names (including trade names) used by the debtor within the last 8 years: | CASE NO.: 1:15-bk-12982-MT<br>CHAPTER 13 |
|---|---|
| Fulchiero, Louise Perri | **CHAPTER 13 PLAN** |
| | **CREDITOR'S MEETING:**<br>**DATE:** 11/04/2015<br>**TIME:** 09:00 AM<br>**PLACE:** Rm 100, 21041 Burbank Blvd<br>Woodland Hills, CA 91367<br><br>**CONFIRMATION HEARING:**<br>**DATE:** 12/15/2015<br>**TIME:** 09:30 AM<br>**PLACE:** Crtrm 302, 21041 Burbank Blvd<br>Woodland Hills, CA 91367 |
| Debtor(s). | |

**NOTICE**

This Chapter 13 Plan is proposed by the above Debtor. The Debtor attests that the information stated in this Plan is accurate. Creditors cannot vote on this Plan. However, creditors may object to this Plan being confirmed pursuant to 11 U.S.C. §1324. Any objection must be in writing and must be filed with the court and served upon the Debtor, Debtor's attorney (if any), and the chapter 13 trustee not less than 7 days before the date set for the meeting of creditors. Unless an objection is filed and served, the court may confirm this Plan. The Plan, if confirmed, modifies the rights and duties of

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 1 F 3015-1.01.CHAPTER13.PLAN

EXHIBIT A
PAGE 1 OF 8

the Debtor and creditors to the treatment provided in the Plan as confirmed, with the following IMPORTANT EXCEPTIONS:

Unless otherwise provided by law, each creditor will retain its lien until the earlier of payment of the underlying debt determined under non-bankruptcy law or discharge under 11 U.S.C. §1328. If the case under this chapter is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law.

Defaults will be cured using the interest rate set forth below in the Plan. Any ongoing obligation will be paid according to the terms of the Plan.

**HOLDERS OF SECURED CLAIMS AND CLASS 1 CLAIMANTS WILL BE PAID ACCORDING TO THIS PLAN AFTER CONFIRMATION UNLESS THE SECURED CREDITOR OR CLASS 1 CLAIMANT FILES A PROOF OF CLAIM IN A DIFFERENT AMOUNT THAN THAT PROVIDED IN THE PLAN.** If a secured creditor or a class 1 creditor files a proof of claim, that creditor will be paid according to that creditor's proof of claim, unless the court orders otherwise.

**HOLDERS OF ALL OTHER CLAIMS MUST TIMELY FILE PROOFS OF CLAIMS, IF THE CODE SO REQUIRES, OR THEY WILL NOT BE PAID ANY AMOUNT.** A Debtor who confirms a Plan may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. §1328.

The Debtor proposes the following Plan and makes the following declarations:

## I. PROPERTY AND FUTURE EARNINGS OR INCOME SUBJECT TO THE SUPERVISION AND CONTROL OF THE CHAPTER 13 TRUSTEE

The Debtor submits the following to the supervision and control of the chapter 13 trustee:

A. Payments by Debtor of $ 421.80 per month for 60 months. This monthly Plan Payment will begin within 30 days of the date the petition was filed.

B. The base plan amount is $ 25,308.00 which is estimated to pay 100 % of the allowed claims of nonpriority unsecured creditors. If that percentage is less than 100%, the Debtor will pay the Plan Payment stated in this Plan for the full term of the Plan or until the base plan amount is paid in full, and the chapter 13 trustee may increase the percentage to be paid to creditors accordingly.

C. Amounts necessary for the payment of postpetition claims allowed under 11 U.S.C. §1305.

D. Preconfirmation adequate protection payments for any creditor who holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in the Plan. Preconfirmation adequate protection payments and preconfirmation lease payments will be paid to the chapter 13 trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

Each adequate protection payment or preconfirmation lease payment will commence on or before the 30th day from the date of filing of the case. The chapter 13 trustee shall deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from the Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured(s) creditor(s) at the next available disbursement or as soon as practicable after the payment is received and posted to the chapter 13 trustee's account. The chapter 13 trustee will take his or her statutory fee on all disbursements made for preconfirmation adequate protection payments or preconfirmation lease payments.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 2 F 3015-1.01.CHAPTER13.PLAN

EXHIBIT A
PAGE 2 OF 8

Exhibit A B Page 3 of 14
Main Document Page 3 of 8

E. Other property (*specify property or indicate none*): ____________________

**II. ORDER OF PAYMENTS; CLASSIFICATION AND TREATMENT OF CLAIMS:**
Except as otherwise provided in the Plan or by court order, the chapter 13 trustee shall disburse all available funds for the payment of claims as follows:

A. ORDER OF PAYMENTS:

1. If there are Domestic Support Obligations, the order of priority shall be:

   (a) Domestic Support Obligations and the chapter 13 trustee's fee not exceeding the amount accrued on payments made to date;

   (b) Administrative expenses (Class 1(a)) in amount not exceeding ______% of each Plan Payment until paid in full;

2. If there are no Domestic Support Obligations, the order of priority shall be the chapter 13 trustee's fee not exceeding the amount accrued on payments made to date, and administrative expenses (Class 1(a)) in an amount not exceeding ______% of each Plan Payment until paid in full.

3. Notwithstanding 1 and 2 above, ongoing payments on secured debts that are to be made by the chapter 13 trustee from the Plan Payment; such secured debt may be paid by the chapter 13 trustee commencing with the inception of Plan Payments.

4. Subject to 1, 2, and 3 above, pro rata to all other claims except as otherwise provided in the Plan.

5. No payment shall be made on nonpriority unsecured claims until all secured and priority claims have been paid in full.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 3 **F 3015-1.01.CHAPTER13.PLAN**

EXHIBIT A
PAGE 3 OF 8

Exhibit A B Page 4 of 14
Main Document Page 4 of 8

B. CLASSIFICATION AND TREATMENT OF CLAIMS:

| **CLASS 1** | | | | | |
|---|---|---|---|---|---|
| **ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507**<br>The Debtor will pay Class 1 claims in full; except the debtor may provide for less than full payment of Domestic Support Obligations pursuant to 11 U.S.C. §1322(a)(4). | | | | | |
| **CATEGORY** | **AMOUNT OF PRIORITY CLAIM** | **INTEREST RATE, if any** | **MONTHLY PAYMENT** | **NUMBER OF MONTHS** | **TOTAL PAYMENT** |
| **a. Administrative Expenses** | | | | | |
| (1) Chapter 13 trustee's fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | | | |
| (2) Attorney's fees | $ 4,000 | | $ 400.00 | 8 | $ 4,000 |
| (3) Chapter 7 trustee's fees (*specify trustee name*) | $ | | $ | | $ |
| (4) Other | $ | | $ | | $ |
| **b. Other Priority Claims** | | | | | |
| (1) Internal Revenue Service | $ | % | $ | | $ |
| (2) Franchise Tax Board | $ | % | $ | | $ |
| (3) Domestic Support Obligation | $ | % | $ | | $ |
| (4) Other | $ | % | $ | | $ |
| **c. Domestic Support Obligations that are not to be paid in full in the Plan (*specify creditor name*):** | | | | | |
| | $ | % | $ | | $ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 4 F 3015-1.01.CHAPTER13.PLAN

EXHIBIT A
PAGE 4 OF 8

Exhibit A B Page 5 of 14
Main Document Page 5 of 8

## CLASS 2

**CLAIMS SECURED SOLELY BY PROPERTY THAT IS THE DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES AFTER THE FINAL PLAN PAYMENT IS DUE**

1. ☐ The postconfirmation monthly mortgage payment will be made by the chapter 13 trustee from the Plan Payment to:

2. ☑ The postconfirmation monthly mortgage payment will be made by the Debtor directly to:

McPhillips 2006 Trust (name of creditor) — 1062 (last 4 digits of account number)

(name of creditor) (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages for the primary residence through the Plan Payment as set forth below.**

| Name of Creditor | Last 4 Digits of Account Number | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| McPhillips 2006 Trust | 1062 | $ 18,800 | 0 % | $ 421.80 | 45 | $ 18,800 |
| | | $ | % | $ | | $ |

## CLASS 3

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE PAID IN FULL DURING THE TERM OF THE PLAN**

| Name of Creditor | Last 4 Digits of Account Number | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | Equal Monthly Payment | NUMBER OF MONTHS | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|
| | | $ | $ | % | $ | | $ |
| | | $ | $ | % | $ | | $ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 5 F 3015-1.01.CHAPTER13.PLAN

EXHIBIT A
PAGE 5 OF 8

Exhibit A B Page 6 of 14
Main Document Page 6 of 8

**CLASS 4**

**OTHER SECURED CLAIMS ON WHICH THE LAST PAYMENT IS DUE AFTER THE DATE ON WHICH THE FINAL PAYMENT UNDER THE PLAN IS DUE**

1. ☐ The postconfirmation monthly payment pursuant to the promissory note will be made by the chapter 13 trustee from the Plan Payment to:
2. ☐ The postconfirmation monthly payment pursuant to the promissory note will be made by the Debtor directly to:

_______________ (name of creditor) _______________ (last 4 digits of account number)

_______________ (name of creditor) _______________ (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages on these claims through the Plan Payment as set forth below.**

| Name of Creditor | Last 4 Digits of Account Number | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| | | $ | % | $ | | $ |
| | | $ | % | $ | | $ |

**CLASS 5**

**NON-PRIORITY UNSECURED CLAIMS**

The Debtor estimates that non-priority unsecured claims total the sum of $ 0 .

Class 5 claims will be paid as follows:

(Check one box only.)
☑ Class 5 claims (including allowed unsecured amounts from Class 3) are of one class and will be paid pro rata.

OR

☐ Class 5 claims will be divided into subclasses as shown on the attached exhibit (which also shows the justification for the differentiation among the subclasses) and the creditors in each subclass will be paid pro rata.

## III. COMPARISON WITH CHAPTER 7

The value as of the effective date of the Plan of property to be distributed under the Plan on account of each allowed claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. The amount distributed to nonpriority unsecured creditors in chapter 7 would be $ 0 which is estimated to pay 0 % of the scheduled nonpriority unsecured debt.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012* Page 6 **F 3015-1.01.CHAPTER13.PLAN**

EXHIBIT A
PAGE 6 OF 8

Exhibit A B Page 7 of 14
Main Document Page 7 of 8

## IV. PLAN ANALYSIS

| TOTAL PAYMENTS PROVIDED FOR UNDER THE PLAN | |
|---|---|
| CLASS 1a | $ 4,000.00 |
| CLASS 1b | $ 0 |
| CLASS 1c | $ 0 |
| CLASS 2 | $ 18,800.00 |
| CLASS 3 | $ 0 |
| CLASS 4 | $ 0 |
| CLASS 5 | $ 0 |
| SUB-TOTAL | $ 22,800.00 |
| CHAPTER 13 TRUSTEE'S FEE (Estimated 11% unless advised otherwise) | $ 2,508.00 |
| TOTAL PAYMENT | $ 25,308.00 |

## V. OTHER PROVISIONS

A. The Debtor rejects the following executor contracts and unexpired leases.
None

B. The Debtor assumes the executory contracts or unexpired leases set forth in this section. As to each contract or lease assumed, any defaults therein and Debtor's proposal for cure of said default(s) is described in Class 4 of this Plan. The Debtor has a leasehold interest in personal property and will make all post-petition payments directly to the lessor(s):
None

C. In addition to the payments specified in Class 2 and Class 4, the Debtor will make regular payments, including any preconfirmation payments, directly to the following:
None

D. The Debtor hereby surrenders the following personal or real property (*identify property and creditor to which it is surrendered)*: None

E. The Debtor shall incur no debt greater than $500.00 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

F. Miscellaneous provisions (*use attachment, if necessary*):
None

G. The chapter 13 trustee is authorized to disburse funds after the date confirmation is announced in open court.

H. The Debtor will pay timely all postconfirmation tax liabilities directly to the appropriate taxing authorities as they come due.

I. The Debtor will pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 7 **F 3015-1.01.CHAPTER13.PLAN**

EXHIBIT A
PAGE 7 OF 8

Exhibit A B Page 8 of 14
Main Document Page 8 of 8

### VI. REVESTING OF PROPERTY

Property of the estate shall not revest in the Debtor until such time as a discharge is granted or the case is dismissed or closed without discharge. Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law. After confirmation of the Plan, the chapter 13 trustee shall have no further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Prior to any discharge or dismissal, the Debtor must seek approval of the court to purchase, sell, or refinance real property.

Date: 09/22/2015

/S/ Lee Linson
Attorney for Debtor

/S/ Louise Perri Fulchiero
Debtor

____________________
Joint Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012* Page 8 **F 3015-1.01.CHAPTER13.PLAN**

EXHIBIT A
PAGE 8 OF 8

**UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA**

**PROOF OF CLAIM**

Name of Debtor: LOUISE P FULCHIERO

Case Number: 15-12982

COURT USE ONLY

NOTE: *Do not use this form make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Santander Consumer USA Inc.

Name and address where notices should be sent:
Santander Consumer USA Inc.
P.O. Box 961245
Fort Worth, TX 76161-1245
Telephone No. (888) 437-4846 email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** ______
*(If known)*

Filed on: ______

Name and address where payment should be sent (if different from above):
Santander Consumer USA Inc.
P.O. Box 560284
Dallas, TX 75356
Telephone No. (888) 437-4846 email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** **$13,220.88 plus 24.99%**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| 8475 | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ 542.70

**Nature of property or right of setoff:** ☐ Real Estate ☑ Motor Vehicle ☐ Other
**Describe:** 2003 BMW 5 SERIES

**Basis for perfection:** Certificate of Title

**Value of Property:** $ 6,350.00

**Amount of Secured Claim:** $6,350.00

**Annual Interest Rate:** 24.99% ☑ Fixed or ☐ Variable
**(when case was filed)**

**Amount Unsecured:** $6,870.88

**5. Amount of Claim Entitled to Priority Over 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestics support obligations Over 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

$______

** Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction#6)

EXHIBIT B
PAGE 1 OF 6

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judements, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare Over penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and resonable belief.

Print Name: Janiscia Jackson
Title: Bankruptcy Clerk
Company: Santander Consumer USA, Inc

/s/ Janiscia Jackson
(Signature)

10/05/2015
(Date)

Address and telephone number (if different from notice address above):

______________________________________________________

Telephone number:______________________ email:__________________________

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U. S. C. §§ 152 and 3571.

EXHIBIT B
PAGE 2 OF 6

Santander CONSUMER

Case Number: 15-12982
Filer(s) Name:
LOUISE P FULCHIERO

Account No: 8475
Original Claim #:

## Payoff Itemization

**Filing Date:** 9/8/2015

| | |
|---|---|
| Total Principal: | $ 12,304.60 |
| Total Interest: | $ 766.97 |
| Total Extension Fees: | $ 50.00 |
| Total Late Fees: | $ 84.31 |
| Total NSF Fees: | $ 15.00 |
| Total Legal Fees: | $ 0.00 |
| Total Repo Fees: | $ 0.00 |
| **Payoff** | $13,220.88 |

©2008 Santander Consumer USA Inc. // P.O.Box 562088 // Dallas, TX 75247

EXHIBIT B
PAGE 3 OF 6

Case 1:15-bk-12982-MT Claim 2-1 Filed 10/05/15 Desc Main Document Page 4 of 6

**CALIFORNIA RETAIL INSTALLMENT CONTRACT**

Contract Number ______

Date of Contract **Oct 19, 2012**

Meaning of Some Words: In this contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

Seller (Creditor): **CarMax Auto Superstores California, LLC, 1131 CENTRAL AVENUE, DUARTE, CA 91010**
Name / Address / Zip Code

Buyer: **LOUISE P FULCHIERO, 4412 MOTOR AV, CULVER CITY, CA 90232**
Name / Address / Zip Code

Co-Buyer: ______
Name / Address / Zip Code

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 5,100.00 |
|---|---|---|---|---|
| 24.99 % | $ 15,197.66 e* | $ 15,843.70 | $ 31,041.36 e* | $ 36,141.36 e* |

*e means an estimate

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 431.13 | Monthly, beginning Dec 03, 2012 |
| N/A | N/A | N/A |

See the back of this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

Security: You are giving a security interest in the motor vehicle being purchased.

Late Charge: If a payment is late more than 10 days, you will be charged 5% of the unpaid amount of the installment.

Prepayment: If you pay off the full amount owed under this Contract early, you will not have to pay a penalty.

Description of Vehicle You Are Purchasing — Use of Property: ☒ Personal ☐ Commercial ☐ Agricultural

☐ New
☒ Used

**2003** (Year) **BMW** (Make) **525** (Model) **WBADT43423G024587** (Vehicle Identification Number)

Description of Vehicle You Sold to Creditor as a "Trade-in"

**N/A**
Year / Make / Model / Vehicle Identification Number

**N/A**
Year / Make / Model / Vehicle Identification Number

Optional GAP Waiver Agreement (GAP contract). A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item A.12. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.
Term **N/A** (in months)
I want the optional GAP contract
Buyer Signs ______

**YOUR PROMISE TO PAY**
You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

**SECURITY AGREEMENT:** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**STATEMENT OF INSURANCE**

**PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE COLLATERAL, ENDORSED TO PROTECT CREDITOR AS LOSS-PAYEE, BUT YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT AND INSURANCE COMPANY YOU CHOOSE.**

**NOTICE. No person is required as a condition precedent to financing the purchase of an automobile that any insurance be negotiated or purchased through a particular insurance agent or broker.**

TITLE HOLDER OF COLLATERAL: **Santander Consumer**

REGISTRANT: **LOUISE P FULCHIERO**

PHYSICAL DAMAGE DEDUCTIBLES: Comprehensive $ **500.00** Collision $ **500.00**

INSURANCE COMPANY: **FREEWAY**

POLICY NUMBER: ______

EFFECTIVE DATE: **10/19/2012** EXPIRATION DATE: **N/A**

AGENT NAME: **ANY NAME** TELEPHONE NUMBER: ______

AGENT ADDRESS: **N/A**

You warrant and affirm that you have or will obtain the required insurance coverage as shown above and understand and agree that this is required by the Insurance Requirements section on the reverse side of this Contract.

**YOU AGREE THAT YOU VOLUNTARILY SELECTED THE ABOVE INSURANCE AGENT, BROKER OR COMPANY AND THAT SUCH CHOICE WAS NOT MADE A CONDITION PRECEDENT TO THE EXTENSION OF CREDIT UNDER THIS CONTRACT.**

BUYER [signature]

CO-BUYER ______

SELLER [signature]

**UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.**

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

[signature]

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| A. CASH PRICE | |
| 1. Cash Price of Vehicle | $ 16,998.00 |
| 2. Cash Price of Accessories Not Itemized Separately | $ .00 |
| 3. Dealer Document Preparation Charge (Not A Government Fee) | $ 80.00 |
| 4. Pollution Control Certification Fee Paid To Seller | $ 50.00 |
| 5. Theft Deterrent Device | $ .00 |
| 6. Theft Deterrent Device | $ .00 |
| 7. Surface Protection Product | $ .00 |
| 8. Sales Tax | $ 1,498.70 |
| 9. Optional DMV Electronic Filing Fee* | $ 7.75 |
| 10. Optional Extended Service Contract* To CVR | $ 2,279.00 |
| 11. To Consumer Program Administrators, Inc. For Prior Credit Or Lease Balance N/A (See Down Payment and Trade-In Calculation) | $ .00 |
| 12. Optional GAP Waiver Agreement | $ |
| 13. Vehicle Contract Cancellation Option Agreement | $ .00 |
| 14. Total Cash Sale Price (Sum of A(1) through A(13)) | $ No Charge |
| B. AMOUNTS PAID TO PUBLIC OFFICIALS | 20,913.45 |
| 1. Vehicle License Fees | $ |
| 2. County | $ .00 |
| 3. Registration, Transfer and Titling Fees | $ .00 |
| 4. California Tire Fees* | $ 15.00 |
| 5. Other Official Fees: | $ 7.00 |
| 6. Total Amount Paid To Public Officials (Sum of B(1) through B(5)) | $ .00 |
| C. POLLUTION CONTROL CERTIFICATE OR EXEMPTION FEE PAID TO STATE | $ 22.00<br>8.25 |
| D. SUBTOTAL (A(14) + B(6) + C) | $ |
| E. DOWN PAYMENT | 20,943.70 |
| 1. "Trade-In" | |
| a. Value of "Trade-in" | $ |
| b. Prior Credit or Lease Balance | $ .00 |
| 2. Net Value of "Trade-In" (If 1(b) exceeds 1(a) a negative number will appear.) | $ .00<br>.00 |
| 3. Manufacturer's Rebate | $ |
| 4. Cash Down Payment | $ .00 |
| 5. Other: | $ 5,100.00 |
| 6. Total Down Payment N/A (If the total down payment is a negative number, a zero will appear and the amount still owed will appear in A(11).) | $ .00<br>5,100.00 |
| F. AMOUNT FINANCED (D - E(6)) | $ |
| * Seller may retain a portion of amount. | 15,843.70 |

**Seller Assisted Loan**
**If the Seller assisted you in obtaining a loan to pay for part of the downpayment or purchase price of the vehicle, you will be obligated to repay the loan, and the installment payments under this Contract.**

Amount of Loan $ N/A Finance Charge $ N/A
Total $ N/A repayable in N/A installments of
$ N/A You may be required to pledge security for the loan

**Waiver of Confidentiality**
By signing below, you agree to waive your right under California Vehicle Code § 1808.21 to keep confidential your resident address as maintained in the records of the California Department of Motor Vehicles. This waiver will apply only to a financial institution licensed by the state or federal government to do business in California that acquires an interest in this Contract.

[signature]
Buyer's Signature — Co-Buyer's Signature

**BROKER FEE DISCLOSURE**
**If this Contract is for the sale of a new Vehicle, then this Contract:**
☒ **is not subject to an autobroker fee.**
☐ **is subject to a fee received by the following autobroker:**
______

**If you have a complaint concerning this sale, you should try to resolve it with the Seller. Complaints concerning unfair or deceptive practices or methods by the Seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.**
**After this contract is signed, the Seller may not change the financing or payment terms unless you agree in writing to the change.**
**You do not have to agree to any change, and it is an unfair or deceptive practice for the Seller to make a unilateral change.**

[signature]
Buyer's Signature — Co-Buyer's Signature

**THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT**

**Agreement to Arbitrate**
By initialing below you represent that you have read and agree to the Arbitration Provisions on the back.

[initials]
Buyer's Initials — Co-Buyer's Initials

## NOTICE TO BUYER:

**(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.**

## THERE IS NO COOLING OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION

**California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.**

**However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.**

**YOU ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AND ANY OTHER DOCUMENTS THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS AT THE TIME OF SIGNING.**

Buyer [signature] Date **Oct 19, 2012** — Co-Buyer ______ Date ______

Seller **CarMax Auto Superstores California, LLC** (Firm Name) By [signature] Date 10-19-12

**ASSIGNMENT**

Seller hereby sells, assigns and transfers to **Santander Consumer** ("Assignee") this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all of the terms and conditions of that Dealer Agreement.

[signature] (Seller/Assignor) — [signature] Title — 10-19-12 Date

EXHIBIT B
PAGE 4 OF 6

**Your Representations.** ... in your credit application. You understand that in entering this Contract we have relied on the representations you have made ... You agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Late Charge.** If you fail to pay any installment for more than 10 days after the date it is due, you will pay a late charge of 5% of the unpaid amount of the installment.

**NSF Fees.** If a check, draft, or order presented to us for payment is returned unpaid you will be charged the maximum NSF fee allowable under applicable law, not to exceed $15.

**Care, Use, and Location of the vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract or the vehicle is repossessed, you agree that Creditor, to the extent permitted by applicable law, may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges. Any benefits and/or refunds received shall be applied toward your obligations under this Contract in accordance with applicable law. If you cancel an optional contract, you authorize Creditor to receive any refunds due you, which shall be applied by Creditor towards your obligations under this Contract in accordance with applicable law.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default, we may require that you pay all you owe on this Contract at once subject to any right you may have to reinstate this Contract. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**"Trade-in" and Down Payment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Collection Costs.** Following any notice required by law, you agree to pay our reasonable attorney fees, plus court costs, if we refer this Contract for collection or enforcement to an attorney who is not our salaried employee.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial pay-ment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Applicable Law.** This Contract shall be governed by federal law and California law, except as otherwise provided in this Contract. If any provision is found to be ineffective under any applicable law or regulation, the remainder of this Contract shall not be affected and shall continue to be binding and effective.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Entire Agreement.** This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE:**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**The CarMax Warranty Brochure contains the details of the Limited Warranty.**

**LIMITATION OF WARRANTIES: CARMAX MAKES NO EXPRESS WARRANTIES UNLESS SEPARATELY SET FORTH IN WRITING. ANY AND ALL IMPLIED WARRANTIES APPLICABLE TO THE PRODUCTS SOLD HEREUNDER, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THE WRITTEN LIMITED WARRANTY GIVEN BY CARMAX, IF ANY.**

**To the extent allowed by applicable law, CarMax shall not be liable for any damages relating to loss of use of the products, loss of time, inconvenience or commercial loss, or any other incidental or consequential damages. Any and all warranties are extended only to the original purchaser.**

**SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR EXCLUSION OR LIMITATIONS ON RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.**

**VEHICLE RETURN POLICY. You may return the vehicle to CarMax for a refund and rescind this Contract within 5 calendar days if the condition of the vehicle does not change. This policy only applies to used vehicles.**

## ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.

**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**

**OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019, or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The party that initiates the arbitration shall pay the initial filing fee, and fees and costs thereafter shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

The following Buyers Guide notice applies in the case of a used motor vehicle purchase only and is required by federal regulation:

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT FOR SALE. SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

EXHIBIT B

PAGE 5 OF 6



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827

# Santander Consumer USA Inc.

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | | **Financed Date** | 10/22/2012 |
| **Loan Number** | | **Perfected Date** | 9/16/2013 |
| **Branch** | | **Payoff Date** | |
| **Borrower 1** | FULCHIERO, LOUISE P | **Dealer ID** | |
| **Borrower 2** | | **Dealer** | CARMAX - DUARTE #7136 |
| **Borrower Address** | 4412 MOTOR AVE CULVER CITY, CA 90232 | **Dealer Address** | 1131 CENTRAL AVENUE DUARTE, CA 91010 |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | |
| **Lienholder** | SANTANDER CONSUMER USA |
| **Lienholder Address** | PO BX 25120 LEHIGH VALLEY, PA 18002 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | WBADT43423G024887 | **Issuance Date** | 11/6/2012 |
| **Title Number** | | **Received Date** | 9/16/2013 |
| **Title State** | CA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2003 | **Odometer Reading** | 35529 10/19/2012 |
| **Make** | BMW | **Branding** | |
| **Model** | | | |
| **Owner 1** | FULCHIERO LOUISE PERRI | | |
| **Owner 2** | | | |
| **Owner Address** | 4412 MOTOR AVE CULVER CITY, CA 90232 | | |

EXHIBIT B
PAGE 6 OF 6